UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | File No. 18-cr-254 (ECT/LIB) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Michael Patrick Bushey, | |
| Defendant. | |

_____

Manda M. Sertich, Assistant United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Plaintiff).

Jordan S. Kushner, 431 South Seventh Street, Suite 2446, Minneapolis, MN 55415 (for Defendant).

_____

Defendant Michael Patrick Bushey, indicted on charges of receipt, possession, and distribution of child pornography, objects to two orders issued by Magistrate Judge Leo I. Brisbois to the extent the orders deny his request for an in-person psychological examination. Magistrate Judge Brisbois concluded that the examination Bushey seeks could be conducted by video conference. Bushey argues that the law and factual record establish that the examination cannot reasonably occur by video conference and must be in person.

I

On July 12, 2020, Bushey moved for an order requiring "the United States Marshal[s] Service to arrange for [him] to have an in-person interview with a psychologist at the Courthouse for up to four hours on the day that he next appears in Court for a

hearing." Mot. [ECF No. 95] at 1. Bushey argued the in-person psychological evaluation was necessary to determine "whether his psychological state affected the voluntariness of his interrogation which is the subject of his pending motion to suppress his statement to law enforcement agents on January 27, 2016." *Id.* An in-person evaluation at the courthouse was necessary, Bushey explained, "because the Sherburne County jail [where he was detained] has not permitted any contact visits with inmates since COVID-19 pandemic restrictions were put in place," and because "[p]rofessional standards for psychologists require face-to-face visits in order to conduct evaluations." *Id.* at 1–2. In support of the latter assertion (regarding "[p]rofessional standards"), Bushey relied on a letter from his then-retained psychologist, Amber Lindeman, Psy.D., L.P., that Bushey had filed roughly four months earlier on March 16. ECF No. 82-1. In her letter, Dr. Lindeman wrote that she was not able to evaluate Bushey at that time because of concerns she described regarding "confidentiality." *Id.* Dr. Lindeman explained that the procedures the Sherburne County Jail had implemented for "video visiting" would not "protect Mr. Bushey's right to privacy or confidentiality." *Id.* In support of these assertions, Dr. Lindeman described the video-visiting process and cited a provision from the American Psychological Association Ethics Code, § 5.02. *Id.* Though Dr. Lindeman also wrote that "in order to complete psychological testing, face to face contact is necessary," she neither explained this assertion nor cited authority supporting it. *Id.*

In an order dated July 22, 2020, Magistrate Judge Brisbois granted Bushey's motion in part. ECF No. 97. Magistrate Judge Brisbois ordered the United States Marshal, the United States Attorney, and the Sherburne County Jail "to set a video conference between

[Bushey] and the defense-retained psychologist to take place on August 24, 2020." *Id.* at 5. Magistrate Judge Brisbois also ordered that the video conference "shall not exceed four (4) hours in duration" and required the Marshal, the United States Attorney, and the Sherburne County Jail to "strive to afford [Bushey] the confidentiality necessary to conduct the psychological evaluation." *Id.* Magistrate Judge Brisbois denied Bushey's request for an in-person examination because Dr. Lindeman's letter "[did] not support [Bushey's] assertion that a face to face visit is required." *Id.* at 4. Magistrate Judge Brisbois reasonably understood Dr. Lindeman's letter to say that she "found inadequate the video visit parameters at Sherburne County Jail as those parameters had been explained to her[,]" but that different procedures that better protected Bushey's confidentiality would be sufficient. *Id.*

On July 24, two days after Magistrate Judge Brisbois entered this order, Bushey filed a motion "for reconsideration" of that part of the July 22 order denying his request for "an in-person interview with a psychologist in order to enable an adequate forensic evaluation." Mot. to Reconsider [ECF No. 98] at 1. In this motion, Bushey acknowledged that he "[did] not know whether or not a video conference interview under the conditions set by the Court would be adequate for [Dr. Lindeman]." *Id.* ¶ 2. He went on to explain, however, that "the defense ha[d] since engaged and arranged for funding for another psychologist with specialized expertise in autism in response to Mr. Bushey's previous autism diagnoses." *Id.* ¶ 2. According to Bushey, his new CJA-funded psychologist, Rachel L. Loftin, Ph.D., "made clear that an in-person interview is necessary for her to conduct her evaluation." *Id.* ¶ 3. Bushey's reconsideration motion included a letter from

3

Dr. Loftin in which she asserted that a "video conference is not adequate for the diagnosis and assessment of autism-related features." ECF No. 99-1. In her letter, Dr. Loftin advanced "three main reasons" why this is so. *Id.* First, she explained that it would be important for her to evaluate Bushey's nonverbal communication and that, "[w]hile the most overt nonverbal communication may get captured in video, much will not." *Id.* Second, she explained that "technological problems that are inevitable in video conferencing can interfere with assessment of social behavior." *Id.* Third, she wrote that the "tools [she] use[s] for the evaluation of autism were standardized and validated in in-person testing" and that "[t]heir accuracy via video assessment is not known." *Id.*[1] The Government filed no response to Bushey's reconsideration motion.

On July 30, Magistrate Judge Brisbois denied Bushey's reconsideration motion. Magistrate Judge Brisbois identified essentially two grounds for his decision. First, he explained that Bushey had violated Rule 7.1(j) of the Local Rules of the United States District Court for the District of Minnesota, a rule that has been applied to criminal cases though Rule 7.1 generally is entitled "Civil Motion Practice." Order [ECF No. 100] at 1. Bushey had violated Rule 7.1(j), Magistrate Judge Brisbois explained, by failing to request the Court's permission before filing his reconsideration motion. *Id.* at 1–2. Second, Magistrate Judge Brisbois explained that, the Rule 7.1(j) violation aside, he would have

---

[1]   It seems worth observing that Bushey's motion to reconsider wasn't entirely that (*i.e.*, a motion to reconsider). The motion sought an in-person interview with a psychologist who had no part in Bushey's original motion and whose justification for requesting the in-person interview had not been provided to Magistrate Judge Brisbois as part of the original motion.

denied the request regardless because Bushey "ha[d] failed to demonstrate the requisite compelling circumstances to justify even the Court granting [him] permission to file a motion to reconsider." *Id.* at 2. This was because, in Magistrate Judge Brisbois's view, "[t]he assertions provided by the Defense in support of reconsideration [were] largely conclusory and speculative in nature." *Id.* at 3–4. Magistrate Judge Brisbois continued:

> For example, Defendant's retained psychologist fails to explain why a video would fail to capture the nonverbal communication cue she highlighted, including body language, eye gaze, facial expression, and gesture use. Further, although she asserts that the accuracy of the "tools" she uses is unknown when conducted via video assessment, she fails to assert that there will be any actual decrease in accuracy when the assessment is conducted via videoconference.

*Id.* at 4.

## II

### A

All of that gets us to where we are now: Bushey has lodged an objection to Magistrate Judge Brisbois's July 22 order to the extent it denies his request for an in-person evaluation, and to Magistrate Judge Brisbois's July 30 order denying Bushey's reconsideration motion. Obj. [ECF No. 101] at 1. Bushey argues these orders are contrary to law because they violate his "due process right to a competent psychiatrist or psychologist to conduct an appropriate evaluation and assist in 'evaluation, preparation[,] and presentation of the defense' for both trial and sentencing." *Id.* at 4 (quoting *Ake v. Oklahoma*, 470 U.S. 68, 83–84 (1985)). Bushey argues that the orders are clearly erroneous in light of the factual record because Dr. Loftin has adequately explained why

5

an in-person examination is necessary to evaluate Bushey's autism and, Bushey says, her explanation is neither contradicted nor rebutted by another witness. Obj. at 4–6.

To support his objection, Bushey has submitted a declaration from Dr. Loftin that he did not submit to Magistrate Judge Brisbois. Loftin Decl. [ECF No. 102]. (Indeed, Dr. Loftin's testimony responds explicitly to Magistrate Judge Brisbois's reasoning. *See id.* ¶¶ 8, 13, 15.) In her declaration, Dr. Loftin adds considerably to the comparatively brief letter she submitted in support of Bushey's reconsideration motion. She attaches her curriculum vitae (or "CV") showing that she is "a licensed clinical psychologist who specializes in research, evaluation and treatment of the effects of Autism Spectrum Disorder (ASD) in children and adults." *Id.* ¶ 2; *see* ECF No. 102-1. In further support of her earlier assertion that a video examination will not capture "much" nonverbal communication essential to understanding how autism affects an individual, ECF No. 99-1, Dr. Loftin testifies:

> I know from my extensive experience doing in-person and video conference meetings that video conferencing is inadequate to capture non-verbal communication. For example, it is not possible to detect with any accuracy whether a person is using eye gaze for communication purposes over video conference or to detect subtle gestures and nuances that can only be observed in person.

Loftin Decl. ¶ 8. Dr. Loftin cites two scholarly articles she has co-authored and four presentations she has given addressing the use of video conferencing to care for individuals with autism and testifies that, in her opinion, "[v]ideo conferencing can be appropriate for therapy but not evaluation." *Id.* ¶¶ 9, 10. Regarding the use of video conferencing, she also testifies:

> It is likely possible to diagnose autism over video in the most obvious cases where people have intellectual disability and very conspicuous social problems. The only existing research on diagnoses of ASD via video-conference is focused on young children who tend to clearly display symptoms. Autistic adults have almost always developed more social skills that make symptoms more difficult to detect ("compensatory skills"). Differentiating autism from other psychiatric conditions becomes more complex over videoconference as well. Nuances and subtleties that can only be observed in person are essential to understanding [] a person's symptoms.

*Id.* ¶ 11. Regarding her earlier assertion that "technological problems that are inevitable in video conferencing can interfere with assessment of social behavior[,]" ECF No. 99-1, Dr. Loftin testifies that this statement "was based not on speculation but on countless video conferences[,]" Loftin Decl. ¶ 13. She explains that "[a] delay over the feed can make it seem as if someone has a social or processing speed problem when they do not. If the video freezes, it can also be misinterpreted as being less expressive or not using gesture." *Id.* Finally, as further support for her earlier assertion questioning the accuracy of her assessment tools in the context of video conferencing, ECF No. 99-1, Dr. Loftin testifies that her evaluative tools were validated through scientific testing done in person and that "[she] could not provide any diagnosis and assessment with a reasonable degree of scientific certainty unless [she] kn[ew] that the tools that [she] used were scientifically valid[,]" Loftin Decl. ¶ 15. Dr. Loftin concludes her declaration with the following paragraph:

> It is not my wish to inconvenience the Court system or subject anyone to increased health risks. I also would be much happier to do a video conference interview rather than have to travel from Chicago to Minneapolis. Unfortunately, it is not possible

7

>for me to conduct a valid evaluation without an in-person interview.

*Id.* ¶ 18.

The Government has filed a response to Bushey's objection. ECF No. 107. The Government does not object to Bushey's request for an in-person examination, but instead identifies two concerns regarding Bushey's proposed process for an in-person evaluation. *Id.* at 1–2. First, Bushey has proposed that the examination take place at the courthouse the day of the next hearing. But the only calendared hearing is a suppression hearing at which Bushey intends to introduce the results of the examination. Thus, the Government points out, Bushey's proposal would not permit the Government sufficient time to assess the results of the evaluation before the suppression hearing. *Id.* at 2. Second, the Government points out, having consulted with officials at the Sherburne County Jail, that Bushey likely would be subject to a 14-day quarantine and would require separate transport back to the jail following an in-person interview. *Id.* at 2–3.

### B

Review of a magistrate judge's ruling on a nondispositive issue is "extremely deferential." *Scott v. United States*, 552 F. Supp. 2d 917, 919 (D. Minn. 2008). A nondispositive order may be overruled only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *accord* Fed. R. Crim. Pro. 59(a); Local Rule 72.2(a)(3). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. A decision is contrary to law when it fails to apply or misapplies relevant

8

statutes, case law or rules of procedure." *Wells Fargo & Co. v. United States*, 750 F. Supp. 2d 1049, 1050 (D. Minn. 2010) (citations and internal quotations omitted).

Neither of the orders Bushey challenges was contrary to law in the sense Bushey seems to describe. Of course, "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). In *Ake v. Oklahoma*, the Supreme Court held that an indigent defendant who demonstrates his sanity will be a significant factor at trial is entitled access "to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." 470 U.S. 68, 83 (1985). *Ake*'s protections are not limited to defendants who raise an insanity defense. They extend to the indigent defendant whose mental condition is both "relevant to the punishment he might suffer" and "seriously in question." *McWilliams v. Dunn*, 137 S. Ct. 1790, 1798 (U.S. 2017) (citations and internal quotations omitted). Acknowledging all of that law, Bushey has not identified, and research has not unearthed, a federal decision holding that the Constitution mandates an in-person examination in all cases or whenever requested. This only makes sense. A defendant is not guaranteed the assistance of any expert he chooses. *Starr v. Lockhart*, 23 F.3d 1280, 1290 (8th Cir. 1994). It seems a leap-too-far to argue that a defendant reasonably could insist on the specific manner in which an expert does her job, and in any given case, a medical expert might not require an in-person examination or may accomplish her purpose by other means, such as through a video consultation or record review.

The factual record before Magistrate Judge Brisbois was equivocal and not well-developed, and that's Bushey's fault. Bushey's original motion sought an in-person examination to be conducted by Dr. Lindeman (not Dr. Loftin). Mot. at 1–2; ECF No. 82-1. In her letter supporting the motion, Dr. Lindeman identified no specific concerns associated with a video conference apart from confidentiality. ECF No. 82-1. Magistrate Judge Brisbois quite reasonably concluded that, between the Marshals Service, the United States Attorney's office, and the Sherburne County Jail, these confidentiality concerns could be addressed, and a video conference would be appropriate. Order [ECF No. 97] at 4–5. Though Bushey styled his next motion as one seeking "reconsideration" of his motion for an in-person examination to be conducted by Dr. Lindeman, he abandoned Dr. Lindeman, seeking instead to have the interview conducted by Dr. Loftin. Mot. to Reconsider ¶¶ 2–4. The letter Dr. Loftin submitted in support of this motion was not specific. ECF No. 99-1. Magistrate Judge Brisbois reasonably concluded that Dr. Loftin's concerns regarding "technological problems," without more, were "speculative." Order [ECF No. 100] at 3. He also reasonably concluded that Dr. Loftin's statement that she did not know the accuracy of her assessment tools when used in a video conference was, without more, an insufficiently definite basis to decide that an in-person interview was required. *Id.* at 4. These conclusions were not clearly erroneous on the record before Magistrate Judge Brisbois.

The record here is considerably more specific. Dr. Loftin's declaration, ECF No. 102, identifies particular reasons and sources underlying the need for an in-person interview. Ordinarily, the review of a magistrate judge's order under the circumstances

10

presented here would be limited to the record evidence that was before the magistrate judge. *E.g.*, *United States v. Andrews*, 381 F. Supp. 3d 1044, 1064–65 (D. Minn. 2019). This is one of those exceedingly rare cases in which it makes sense to consider new evidence. The Government did not object to Bushey's submission of Dr. Loftin's declaration. So long as it takes place in a reasonable time, and so long as the Government has an adequate opportunity to respond, the Government seems never to have opposed Bushey's request for an in-person examination. And once considered, there really isn't any question that Dr. Loftin's declaration justifies granting Bushey's motion for an in-person examination. The declaration, described earlier, is thorough, specific, and supported by Dr. Loftin's experience and scholarly sources. The record here contains no contrary evidence. Further, a prerequisite to the approval of CJA funds for Bushey to retain Dr. Loftin was the finding, among others, that the services are "necessary for adequate representation." 18 U.S.C. § 3006A(e)(1); *see also* United States District Court for the District of Minnesota Criminal Justice Act Plan ¶ XII.A., *available at* https://www.mnd.uscourts.gov/sites/mnd/files/cja.pdf ("Upon finding that [expert] services are necessary, and that the person is financially unable to obtain them, the court must authorize counsel to obtain the services."). Dr. Loftin has made clear that she cannot complete a "valid evaluation" of Bushey via video conference. Loftin Decl. ¶ 18. Whether or not this assertion lacked support on the record earlier in the case, it is supported now.

## ORDER

Therefore, based on the foregoing, and all the files, records, and proceedings herein,

**IT IS ORDERED THAT**:

1. Defendant's Objection to the Magistrate Judge's Orders of July 22, 2020 [ECF No. 97], and July 30, 2020 [ECF No. 100], is **SUSTAINED**.

2. The Orders [ECF Nos. 97 and 100] are **REVERSED** insofar as they denied Defendant's request for the Government to arrange an in-person evaluation with Dr. Loftin.

3. The United States Marshal, the United States Attorney assigned to the case, and the Sherburne County Jail, together with Defendant, shall arrange for an in-person evaluation between Defendant and the defense-retained psychologist. The evaluation shall take place by not later than Friday, October 9, 2020, and shall not exceed four hours in duration.

4. Defendant shall disclose to the Government any report generated from the psychological evaluation as soon as practicable, and in any event no later than fourteen (14) days before the hearing on Defendant's pending motion to suppress statements [ECF No. 75].

5. The Parties are directed to contact the chambers of Magistrate Judge Brisbois regarding the scheduling of a hearing on Defendant's motion to suppress statements.

Dated: September 11, 2020       s/ Eric C. Tostrud
                                Eric C. Tostrud
                                United States District Court